of Engineers, Ed Au and Will. We appreciate you giving us your argument to the time allotted. And when the red light comes on, bring your argument to a close. First case for oral argument this morning is Ft Bend Cty v. US Army Corps of Engineers, Ed Au and Will. We'll hear first from Mr. Lopez. May it please the court, Keith Lopez on behalf of appellants Ft Bend Cty, Ft Bend Cty Drainage District and Senko Municipal Utility District No. 1. There are three main issues before the court today. First, is there an agency action or inaction subject to judicial review? Second, is this a case solely in which damages are sought or said differently under the Administrative Procedure Act? Is there an adequate remedy for all of my client's claims in the U.S. Court of Claims? And the third issue, if we prevail on the first two issues, should this case be reassigned to another judge? And I'll start with the first issue that I've presented. My main issue is that is there an agency action or inaction subject to judicial review? The Administrative Procedure Act makes clear that people or entities who are affected by agency actions and certain inactions have the right to ask a federal court to review those actions to determine, for example, whether the action was arbitrary, did the agency follow its own regulations, etc. This is a robust right, this right of judicial review. And absent clear and convincing evidence of legislative intent to preclude judicial review, then judicial review is the default and that's the Bowen v. Michigan Academy case. The agency action in this case that we are seeking review of is the Army Corps of Engineers adoption of the Water Control Manual, which sets out how the Corps was going to operate the reservoirs, specifically the Barker Reservoir here, which led to the flooding of my client's property. The Corps admits that the adoption of the Water Control Manual was a final agency action. That's in the record at 559 in a brief that they filed in district court and in their brief here at page 28. From what we know of our limited record, when the Corps adopted the Water Control Manual, it knew that in a maximum design weather event that upstream properties and communities behind the reservoirs would be flooded, in effect sacrificed to protect the city of Houston. That's in the record at 82 and 83, and that's the Corps' 1995 reconnaissance report, where the Corps specifically stated, and I quote, recent flood events have clearly identified the need for modification of the reservoir or operational changes. That's what they knew in 1995. And indeed, the Corps called this flooding of the upstream properties the special problem. That's in the record at 476. Judge Dennis, can you hear me? Yes, I can hear you. I've lost my picture, but go ahead. I can hear you. Okay. I didn't know if the camera caught me because I'm tall either. It just sent me maybe in the middle. Judge Dennis, if you do want us to continue, we could pause and let IT work on it. It's back. I see it. Okay. I think it's okay now. Thanks, Judge. Again, getting back to what the Corps called the special problem, and the special problem is the flooding of upstream properties, my client's properties, and that was in the Corps' 1986 master plan update. Again, that's in the record at 476. So we have documents showing that the Corps knew about this issue, the reservoirs flooding upstream properties, since 1986 and 1995. If the reservoirs weren't there, my client's properties wouldn't have flooded. They're effectively uphill from the city of Houston, reservoirs were built, and the water backed up and flooded my client's property. So judicial review of the Corps' adoption of the Water Control Manual is the basis of our first claim, and this is what we put in our complaint, the Corps' November 2012 adoption of the Water Control Manual without including procedures that prevent the Corps from exceeding the government-owned land boundaries of the reservoirs. Now, the Administrative Procedure Act, Sessions 702 and 706-2, my clients have the right to ask for judicial review. Supreme Court is— Judicial review of what? I mean, help me here because it just strikes me that the adoption of this manual and the revisions of it, those things are ultimately discretionary for the Corps. I mean, what exactly do you expect to get here? It sounds like you're seeking to tell the Corps this is how you do your job. No. Tell me how I'm wrong. No, there are specific regulations, Your Honor, that we've listed 13 mandatory regulations that we would simply just like the Corps to follow. And if the Corps followed those regulations, then hopefully my client's property would not flood or would not have been flooded. And the Supreme Court has made it clear that for— and this is in the Overton Park case versus Volpe— that it is a rare instances where statutes or regulations are drawn in such broad terms that there's no law to apply. There is law to apply here with our regulations. These are mandatory. And in the Trout Unlimited case, Buchanan v. FL case, the Norton Construction case, it's clear that a nondiscretionary duty can be created when there's mandatory language in a regulation. And that's— How does this feed into the issue that the administrative record wasn't produced or provided? I mean, it's— That's— You have snippets, right? Or tell me about that. Is that a threshold issue that— We don't even have it. Your Honor, we don't have an administrative record in this case. The reason why that issue was brought up, that's a secondary issue as I view it, is that we don't even have an administrative record in this case. We've did a FOIA request. That's in the record. We've mentioned it in our briefs. And the Corps has admitted we don't have one. And so there's—we don't even know what's the basis of any of the decisions. And what I think is important and what we're getting at here is that— Let me just go over some of these regulations that we have. Here's some regulations. The Corps, quote, shall incorporate risk and uncertainty analysis in water control management activities. Here's another one. The water control manuals, quote, shall be revised as necessary to conform to changing requirements. Like building upstream. There's construction upstream in the last 60 years that this reservoir's been there. Water control manuals, quote, shall be developed in consultation with all basin interests that are impacted or could be impacted. All these regulations are mandatory. Telling the Corps— They're mandatory, but everything you just read has an element of discretion in it, doesn't it? In other words, what if the Corps said we consulted everybody? What if the Corps said we considered everything? And what if the Corps said we don't think it needs to be revised at the moment? I mean, in other words, do the plaintiffs just seek to substitute their own judgment in hindsight after this 2017 event for what the Corps did based on following those regulations? The Corps did none of those things. My clients are the local governmental entities in charge of flooding and drainage. That's why they brought this lawsuit. The regulations require consultation, for example. That's just one obligation with them. Never done. And so the Corps' argument here is basically what they're saying, and it's that, look, it's discretionary because it's hard to tell— and we'll just use one of the regulations— what does it mean to be in concert basin interests? But the Corps has done none of these things. They haven't even taken the first step. So the regulation says the Corps shall do something, and they haven't even done it. They haven't consulted. They haven't performed a risk analysis. They haven't purchased government-owned lands to the maximum design requirements of the reservoir. Can I ask you, Counselors, are your arguments of neglect or failure to follow regulations by the Corps primarily procedural arguments, that there were requirements prior to coming up with the manual that weren't followed, or is it a mix of not having consulted, not having done whatever else, and substantive arguments? Both. Both, Your Honor. And the procedural— What was done in the manual that you say violates some more merit-based requirement? Well, we don't have any evidence that a risk analysis, for example, was done. We don't have any evidence that they consulted with all basin interests. We don't have any evidence that they consulted. I'm just trying to see, is there something about the manual itself? Obviously the flooding was still occurring, whatever, if that's abortable. But I'm trying to figure out what besides not doing certain things before coming up with a manual, as opposed to having something in the manual that shouldn't be there. How much of your argument is that latter? And I'm hearing—and not that that invalidates your argument. No, I'm—the question then becomes, Your Honor, and I don't want to avoid the answer to your question, but were the decisions were arbitrary? You'll see certain things that maybe weren't done, and at most you could get those done, and you might be in the same place you are today as far as what the manual says. Not to say that that isn't a viable right to have them pursue that. So I'm trying to see if there's something about the manual itself that you can say at this stage violates some statute or regulation. With the manual, in developing the manual before they adopted it, sure, they violated their own regulations. I think that we've established that with the record. But I guess my point is that is there something ultimately that may change? The answer to that question, frankly, is possibly not. I mean, that's the honest answer, Your Honor. But they have to go through the motions of following their own regulations. But there's one thing that really— there are a few things that possibly wouldn't change, a risk analysis, that may change the way they operate. It may or may not. We're not here to try to tell the Corps what to do. Isn't part of the goal of this lawsuit, or at least part of the objection of what happened so far, is that the Corps needs to purchase more upstream or more wider basin area? Well, that's possibly one result of this. The Corps could—I mean, here are some things I just wrote down off the top of my head. It could use only the land that it had the right to, government-owned lands. That's the first thing it could do. It could dig the reservoirs deeper. It could make downstream channels wider for more capacity. They could create additional channels, channel south around Houston. They could modify their procedures as to when the gates are open and closed. And they could take the data they gained from the 2016 and 2017 storms and maybe change their operations. Again, you have regulations requiring them to revise the Water Control Manual based upon new data. They could do all of these things. And, again, we're not trying to tell the Corps what to do. What we are trying to say is, look, you need to follow your own regulations to— Recording in progress. Modern technologies. It's wonderful. But they could do all of those things. As a result of complying with the regulations. Could you stop just a minute? I don't know if that screen is blocking Judge Dennis. Can you see his big message on his screen and up here too? I don't have a message. Okay, it's gone now. But they could do all of those things. But our real problem is that we have these mandatory regulations out there that the Corps did not comply with. And we're seeking judicial review to do that. We're also seeking judicial review because we have an agency action here. We have the adoption of the Water Control Manual, which the Corps has admitted is an agency action. And we would like review of those procedures. And we have the right to do that under the APA and under the case law that we've cited, including the Bowen v. Michigan case and Bowen v. Massachusetts especially. Now, just briefly, I've got a minute and a half here. Is this a case in which damages are sought? The four corners of our complaint make clear that we're seeking judicial review of the Corps' actions and inactions under the Administrative Procedure Act. Payment of money does not resolve or make our APA claims go away. The payment of money will not force the Corps to follow its own regulations. We have the same type of complex relationship here that we had in the Bowen case. The Supreme Court, this is the Bowen v. Massachusetts case, where the Supreme Court made clear that a simple one-time payment of money was not an adequate remedy. As in Bowen, we are seeking injunctive and declaratory relief, which cannot be granted by the Court of Claims. And in the Bowen case, they were challenging the repayment of Medicaid expenses, so they were seeking money. But the Supreme Court found that the payment of money alone was not sufficient to an adequate remedy because Medicaid program was an ongoing program and you needed the cooperation of two sovereign parties. And that's what we have here, a complex relationship between sovereigns. We have the county and the drainage districts and the Corps who both have to work together regarding drainage and flooding issues. And so we are very much like the Bowen case. In fact, I would say that our case is stronger than Bowen because we're not seeking monetary relief in any form. We don't want money. We don't want our property taken. We just want the Corps to follow its own regulations. That's what we want. And so, like the district court, they looked into, I guess, the soul of our complaint and instead found that all we wanted was money, that it's just not correct. And just briefly— You exceeded your time limit. Okay. You only have five minutes on the vote. Thank you, Your Honor. Brian Toth. Toth? Toth? Toth? May it please the Court, good morning, Your Honors. Brian Toth from the Department of Justice representing Defendant Zappolis. Plaintiffs seek equitable relief to prevent the Army Corps of Engineers from operating its project, known as the Buffalo Bayou and Tributaries Project, consisting of two dams and reservoirs, Barker and Attucks, in the same manner that the Corps operated it during the extraordinary event in rainfall following Hurricane Harvey. The main problem with the plaintiff's claim is that, as the Supreme Court has made clear, there is no cause of action to enjoin a taking of property based on the Fifth Amendment so as to require the government to first pay compensation. The plaintiffs here attempt to dress up their claims with a variety of citations to Corps internal regulations, but the district court correctly held that the essence of their claims relies on issues of ownership, which is central to their claim that this is really a suit to enjoin a taking. The government cited the Supreme Court's case in Nick against Township of Scott. That's the leading case that makes clear that there is no cause of action, even under the APA, which is the sole statute that plaintiffs rely on here, to set aside agency actions as unconstitutional for failure to pay compensation in advance of a taking. That's at page 2179 of 139, Supreme Court reporter from that 2019 decision. Also, your argument, and certainly district court accepted it, has a lot of purchase. The distinction that your friend on the other side is making is that the Corps did not follow the requirements for coming up with this manual, statutory and regulatory requirements, perhaps both. What should we look to to really make this provision, to show that this case is on the side that you're arguing, as opposed to that this is really independent of seeking damages or not seeking damages in the claims court, and at least on the face of it, maybe the face is the wrong word, is at least arguable that what they're seeking is not the equivalent of what they could get in the claims court. So why are you right? I think you should look to the history of the pleadings and the amendments to the pleadings here to see how this case evolved. It started out where the original complaint in the first paragraph, this is at pages 11 and 12 of the record, the last sentence of the umbrella paragraph that starts the complaint refers to the Corps storing flood water on land not owned or controlled by the United States and without payment of just compensation. The rest of their complaint follows from that. And then there are a number of, not only were there assertions of the amount of dollars that the various plaintiffs spent and damages, and they claim that that's to establish their standing, but there are expressed references to the Fifth Amendment there at pages, in the takings clause at pages 48 of the record, 60 of the record. That was the original complaint. The judge- Was that a fair summary of all those in the original complaint, or were they also seeking the kind of APA relief that they're seeking now? I mean, ultimately they are, so I'm not sure of the significance of what you're arguing, but was it in that first complaint as well? The APA, the sites to the various regulations were, yes. My point is that there is nothing, well, to get to a point that you were raising with my friend, the plaintiffs haven't identified anything in the manual that, if set aside, would remedy the injuries that they're complaining about, which focus solely on government-owned land. Is that the problem? They're arguing procedural and, to some extent, maybe some substantive objections to the manual, but it does seem to me mainly that the court did not go about creating this manual as they should. As part of the argument, they haven't shown any injury arising from any shortcomings like that? We haven't framed it strictly in those terms. You framed it better, I bet. Well, I mean, we have other arguments we might raise if this case were remanded. For example, standing is one potentially to consider, but I think in trying to figure out what the essence of their claims is here and looking to all these different citations, you have to look also to their requests for relief, for declaratory judgment. What is the redress they're seeking? Even in the most recent version of their pleadings, the third amended complaint, that was the most recent that the court accepted, in their plea for relief, they still ask for an injunction to prevent an unconstitutional taking of property. There's really no cause for that. This is at page 519 of the record, at paragraph 36 of their third amended complaint. They seek to enjoin the Corps from unconstitutionally impounding flood water on non-government-owned land. Well, Nick makes clear in a long line of precedents from the Supreme Court, including Hurley against Kincaid, in which the Supreme Court in 1932 reversed this court, in a case seeking declaratory and injunctive relief against a Corps of Engineers flood control project, that there is no cause of action to enjoin a taking prior to the payment of just compensation. There's an adequate remedy in the Court of Federal Claims to seek compensation under the Tucker Act. It doesn't matter that they say they're not seeking money in their complaint. The point is there is an adequate remedy at law. Counsel, so help me with this. Maybe I'm just thinking the wrong way, but what if one of the claims, you didn't buy enough government-owned land, is really a takings claim, such that there's an adequate remedy under the Tucker Act and they should be in the Court of Federal Claims? Do we look at the case as a whole? I mean, do we look into the soul of the whole complaint, as the district court did, and say this is really a takings case, period, you're out? Or do we go claim by claim? In other words, if they assert what is basically a takings claim, but then they also assert these claims under the APA, is it right to look at it holistically, or is it right to look at it claim by claim? I think it's legitimate to do both, to examine both. But if you look claim by claim, if we didn't have any references to the takings clause in the history of this case, government agrees, we've made this clear in the district court, and in our answering brief, the 2012 manual is a final agency action. It could be challenged under the APA, just based on arbitrary and capriciousness in violation of a law. The problem, I think, with the history of this case, including the history of amendments to the pleadings, and if you look at the discussion at the initial status conference, which my friend ordered a transcript of, it's in the record, toward the end of the record, the colloquy is all about government-owned land. And their complaint boils down to, and the relief they're seeking, and that's why I would direct you to the relief, because I think that's what gets at the holistic view. You can certainly go claim by claim, but if you choose to look at the holistic view, like the district court did, I think focusing on the relief requested is important here. It all relates to ownership of land, because that's the injury about which they complain. Let me ask you about these particular objections. Maybe they're not claims. I'd have to look back at the complaint. The adoption of this manual without including procedures preventing flooding in non-government-owned land, invalid course, failure to revise the manual following the major flood events you talked about, failure to acquire government-owned land, sufficient government-owned land. I can certainly see the argument that that is an incipient takings argument, at least in part. But I am troubled that there is an argument that under the APA, the Corps failed, or versus the Senate structure, that the APA wasn't complied with in creating this manual. So under the APA, the normal remedy is to set aside the agency action, and they don't request, I mean, strictly speaking, I don't believe that they request that relief in their prayer for relief here. You want the APA to set aside the manual? Is that what you're saying? I don't see that in there. Correct. I don't see that in there. Are you saying that that's the kind of relief they should be seeking, if that's the argument? That's what the Administrative Procedure Act allows under 5 U.S.C. 706. It provides the reviewing court shall hold unlawful and set aside agency action findings if they're arbitrary and capricious. They don't request that relief. They request an adjunctive relief, and they request this four-part declaratory judgment that you, Judge Southwood, were just referring to, where the focus is all government-owned land. Equitable relief was also requested in this 1932 case that I referred to early against Kincaid. That was held to ñ granted it was before the Administrative Procedure Act, but that was held to be precluded by the Tucker Act remedy and the availability of the Tucker Act remedy. I don't want to detour you from anything you want to continue to talk about there. I think I basically have your argument. Let me ask you about this odd decision to have a one-page summary of administrative record. What is your best explanation for why that was ordered as opposed to providing a record? This was a threshold motion to dismiss, and the government had not yet filed an answer to the complaint. The factual context seems to have been important to the court, to the district court, and I think the district judge wanted some factual background quickly and succinctly. There was ñ Was that his proposal, this one-page summary? Was that his proposal? Yes. There was an order. Right, but it wasn't suggested to him by DOJ? The Justice Department didn't suggest that to him as an alternative to ñ he came up with it? It seems to be sui sponte, as far as I can tell from the record and as far as I know from consulting with the counsel who handled the case below. And so it is unusual, but I don't think there's anything in the district court's opinion that couldn't have also been gleaned from other public sources like the two Court of Federal Claims opinions in the takings litigation that is actually pending before the Court of Federal Claims regarding the asserted taking of property due to the operation of this core project. My understanding is none of these plaintiffs have brought takings claims in the Court of Federal Claims? None of the plaintiffs in this case? Not the plaintiffs in this case, but other landowners situated upstream of the dams and also in a different set of cases landowners situated downstream of the dams. And there are two decisions from the Court of Federal Claims, different trial judges, but one decision holding the government liable for a taking as to the upstream property owners. Another decision, which is on appeal to the Federal Circuit, dismissing the claims and finding no taking as to the operation of the dam with respect to the downstream property owners. So I mention that for some context to indicate that there is pending litigation regarding takings claims. Was it appropriate, back to the one-page summary, was it appropriate to do that in the context of a 12b motion or is it kind of like being a little bit pregnant? Shouldn't we have gotten the full administrative record before ruling or ruled based on the pleadings? Well, the court construed the 12b motion as one for jurisdiction, dismissal of –  so there can be factual findings as to the jurisdiction of the court. Based on some record, though, but we've got this one pager that gives some factual context, as you said. But I mean, is that appropriate? I don't think it was – it's not the norm. But I also do not think that the administrative record is required to be produced before the court can decide a threshold motion to dismiss, and particularly one that's based on legal grounds like the ones we've asserted about this being, in essence, a claim for which there is an adequate remedy at law in the CFC and also the threshold legal responsibilities not meeting the requirements of the Supreme Court's decision in Southern Utah Wilderness Alliance. Those are purely legal arguments. They didn't require a review of the underlying merits of the court's action, and so they weren't required to be decided at that threshold stage based on the entire administrative record. But here it strikes me that at least some of the plaintiff's claims are based on the very heart of the administrative record that supports the action the agency took and all those sorts of things. I mean, so it strikes me as different than just a legal conclusion. And I wonder if the district court's one-pager went to the 12b-1 part of the motion or the 12b-6 because he granted on both grounds, right? Seems to have, yeah. No, he seems to have granted on both grounds. I mean, the principal one being the 12b-1 that this is a takings claim in essence. So your position is it wasn't error for the court to consider this one-pager it asked for with regard to the 12b-1 grant? Correct. I don't think it's prejudicial error. Certainly the plaintiffs haven't pointed to any statements in there. Well, they pointed to a few statements in there that they say demonstrate the district court's prejudice as to the merits of their claims. I think you can fairly put aside some of that language in the district court's opinion. It seems to indicate his view of the context of the claims, but I don't think it was necessarily prejudicial to the issues that he was deciding. What about the dismissal with prejudice? Was that correct? Would you support, argue in favor of the dismissal being with prejudice? So— Are you saying that this is really a takings claim or whatever else? I'm wondering if there's anything about such a ruling that would interfere with the right of the plaintiffs to pursue some other remedy. I understand the question. Typically a dismissal for lack of subject matter jurisdiction is without prejudice. So insofar as you believe that that dismissal was correctly based on subject matter jurisdiction, it would be without prejudice. I think you can also look, and Nick supports this, you can look at the dismissal as one for failure to state a claim because the issue is whether there's an adequate remedy of law. That's a matter of, you know, longstanding matter of equity. We pointed to provisions of the Administrative Procedure Act. It might not strictly be, strictly speaking in those terms, be jurisdictional. So to that extent, you know, perhaps with prejudice was appropriate. But in any event, I think you can make clear that they have, potentially have a remedy in the Court of Federal Claims. It's not that we wouldn't have defenses against it, but the fact that they had sought this action and wrongly sought to enjoin the taking, I don't think would preclude them from seeking the monetary relief that we're contending that they ought to have sought. One concern I have about the district court's opinion is it almost reads like a summary judgment opinion. In places towards the end, the court followed the manual about balancing the interest and outcome, chose a plan it believed would best serve the public good. Several more observations like that. Saying too much in an opinion doesn't invalidate it. But anyway, observation about the opinion, don't know if you have any response to that. I would like to take the part of the statement that you mentioned about the court following the water control manual. That was undisputed in the district court, and I'd point to page 694 of the record, which was the initial conference where my friend said that he wasn't disputing that the court followed the water control manual. I think it's rather that he's contending the water control manual does something that interests his clients. And to our mind, and this is certainly how it was framed in the initial conference. That was the next part of the sentence that is getting into the validity of the decision that was then made. You're saying that decision can't be challenged, but he's actually making an observation without the record about why the decision was made, which is, well, I read it. So I think you can glean that information by looking at the fact that the court was sued by landowners both upstream and downstream of the property for its operation of the project during that single event. We have downstream property owners in the Court of Federal Claims contending that the court didn't hold back enough water, that it released too much water. And we have upstream property owners contending that the court held back too much water. So the court was in a predicament of being called on the carpet for whatever action it chose, even though there is no contention that they didn't follow the manual. Everybody agrees they followed the manual. The court is getting sued by somebody either upstream or downstream. And I think you can, and the district court could have picked this up from the fact that there is litigation pending in the Court of Federal Claims. It's just a fact of public record. I understand the court's concerns about the appearance of his deciding the merits. I don't think that that's, in fact, what he did. But to speak to that just briefly, because I recognize that's a serious concern. I think the court ought to be, and I'm sure the court will be, judicious and prudential in deciding whether to reassign the case. We can hope. I would just point out, I think the reassignment request is a slight overreach here. And given the court's recent statement in a different case, it was the Pulse Network against Visa argument, a different panel, case number 18-20669, remarked that this court sees a fair number of reassignment requests for this particular judge. I think given that, the court ought to exercise an extra amount of discretion in deciding whether this is really the type of egregious case that requires reassignment. But I see I'm out of time. Unless the court has other questions, we would ask that the district court's judgment be affirmed. Thank you, sir. Mr. Bocchetti, you have five minutes on the vote. Thank you, Judge. To start off where he left off with Judge Hughes. If he hadn't said that, you couldn't pick up on it. He opened the door for you. Well, the issue is it went beyond asking the court for a one-pager unsworn declaration. His opinion went beyond what that one-pager was. He was effectively, not effectively, he was an advocate for the court, and he pulled up information that's nowhere in the record. I've never seen anything like it. And then, at the end, he included he will not allow, after the fact, a tax on the court's decision. This is an Administrative Procedure Act claim. It's not an attack. He has his mind made up. The bias is clear. We're not going to get a fair shake if we're successful in this court. We're not going to get a fair shake down there. And so that's why we're asking for recusal and that the Miller test is clearly satisfied in this case. But, Judge Southwick, I wanted to get back to the question that you asked. If it's procedural or not, we still have a review under the Administrative Procedure Act. And these are the notes that I just took. You know, had the court complied with all of its regulations, for example, conducted the risk assessment, met with local governments in charge of drainage, all the things that it had to do, and then decided that there were no other alternatives other than to keep procedures that require the flooding of my client's property, and then that decision was not arbitrary, only then would there be traction for the argument that the only adequate remedy for my client's then or another adequate remedy would be the claims court to enforce a taking. Here, the court is arguing that we don't even get to the first step. We don't even get to analyze whether or not the court complied with its regulations under the APA. We just don't even get this. You just have to go to the court of claims. And the court is not immune to judicial review of its actions and actions, and there's no legislative intent here that they've pointed out to preclude judicial review of their administrative actions, and that's required. They have the burden to show that the legislative clearly said, hey, look, you don't have to – they're immune from judicial review. There's nothing that they pointed to. The burden's on them under the Bowen v. Michigan Academy case, and they have not pointed to anything. And so that's the basis of our Administrative Procedure Act issue. Now, he also mentioned kind of the relief that we want. The relief is in our agency actions one, two, and three, or at least the first one, the agency action. We want the court to include procedures based upon their regulations, and we're not telling the court which procedures to include, but they need to include procedures. And what's interesting, that if we look at the record, for example, the reconnaissance report, the court says themselves in 1995 that they need modification of the reservoir or operational changes. So they've known since 1995 in their own documents that they need to include procedures to deal with the special problem of upstream flooding. They've known this, and yet they've done nothing about it. And additionally, when it comes to the government-owned lands and our argument that, did they purchase enough government-owned lands and all of that, there's a specific regulation that requires them to do so, and they didn't. They've not moved to enforce a taking. They have not moved to try to take someone's property. And we want to know why, why that decision was making. We have that right under the Administrative Procedure Act to ask that question. Why, knowing that you're going to flood property upstream, you knew that. You knew that for decades. Why did you not go and take that property? Under the Administrative Procedure Act, we're allowed to get judicial review of that non-action, inaction. We're not saying that they can't take it. We're not saying that they should take it. We're not saying that we don't have a claim for taking, which we do, but it doesn't preclude our Administrative Procedure Act claim. And so that's the issue there. I'm trying to see if there's anything else. Three seconds, counsel. Oh, well, if I've got three seconds, then that's it. I appreciate the questions. Thank you very much, Your Honors, and thank you.